FREEMAN ET AL., APPELLANTS, *v.* WESTLAND BUILDERS, INC., ET AL., APPELLEES.

(No. 42593—Decided July 2, 1981.)

*Mr. James F. Csank,* for appellants.
*Mr. John Shepherd,* for appellees.

JACKSON, C.J. The appellants, husband and wife, brought this lawsuit against the construction company that built their home, Westland Builders, Inc. and three officers of that company, Jay Schwarzer, Barney Schwarzer, and W. Spellring. The appellants' complaint contained the following claims against the appellees:

(1) That appellees constructed the house in an unworkmanlike manner, and that the house was not fit for occupancy;

(2) That appellees failed to construct the house in accordance with the plans and specifications of the contract; and

(3) That the appellees installed items which were not called for in the original specifications, and presented the appellants with a bill for those items on the day of closing, without prior notice that these items would be added to the price of the house.

The appellants further alleged that the actions of the appellees in substituting cheaper materials and in billing the appellants for extra items were done maliciously and fraudulently.[1]

The trial court entered judgment for the defendants-appellees on all three claims.[2] The following findings of fact and conclusions of law were filed by the trial court in support of its verdict:

"This cause came on for trial and the

---

[1] The allegation of "malice" adds nothing to the claims of poor workmanship and breach of contract, because punitive damages are not recoverable in such actions. *Tibbs* v. *National Homes Constr. Corp.* (1977), 52 Ohio App. 2d 281 [6 O.O.3d 300]. Punitive damages are recoverable in an action for fraud, however, if malice is proven. *Logsdon* v. *Graham Ford Co.* (1978), 54 Ohio St. 2d 336, 339 [8 O.O.3d 349].

[2] This case was tried to the court without a jury. At the close of the plaintiffs-appellants' case, the defendants-appellees moved for a "directed verdict," which was granted as to the individual appellees. A directed verdict is

Court having heard the evidence and the Plaintiff having filed a request on June 11, 1980 for separate findings and conclusions on the general findings theretofore made, therefore finds the facts and states the conclusions of law as follows:

## "FINDINGS OF FACT

"1) Plaintiffs who are husband and wife and co-owners of the real estate known as and located at 3772 River Lane, City of Rocky River, County of Cuyahoga and State of Ohio.

"2) Defendant is an Ohio Corporation.

"3) On or about January 24, 1977 Plaintiff and Defendant entered into a contract for the construction and sale of a Four Bedroom Colonial Home by Defendant for and on behalf of Plaintiffs.

"4) On or about February 2, 1977 final plans and specifications were concluded for the construction by Defendant for Plaintiff of a Five Bedroom home.

"5) Transfer of title and occupancy of the home in question was given to Plaintiffs by Defendant in August, 1977.

"6) Plaintiffs did not complain to Defendant about any alleged defects until August 28, 1978.

"7) That there is no evidence in support of the claim by the Plaintiffs that there were defects in the structure, materials or that cheaper or inferior fixtures or materials than were called for by the specifications were installed in the residential structure.

"8) That there is no evidence in support of Plaintiffs' contention that labor, materials and the structure did not meet the building codes of Rocky River, Ohio or that the basement, basement drains or driveway were negligently constructed, improperly prepared or installed.

"9) That there is no evidence in support of Plaintiffs' contention that the Defendant or its employees with knowledge, and/or malice made misrepresentations concerning materials used in construction of the residence or that there was a wilful, wanton and/or malicious intent to defraud, deceive or conceal material matter from the Plaintiffs.

"10) That there is no evidence in support of Plaintiffs' contention that the residence was constructed in an unworkmanlike manner, nor that the residence was constructed other than in accordance with the plans and specifications.

## "CONCLUSIONS OF LAW

"1) It is the duty of the builder of a structure to perform his work in a workmanlike manner and the law exacts from a builder only ordinary care and skill.

"2) No absolute warranty is implied by law against builder of a house since the measure of his duty is to be ascertained by reference to a standard of ordinary care and skill.

"3) A builder is not an insurer.

"4) A duty is imposed by law upon builder-vendor of a real property structure to construct same in a workmanlike manner and employ such care and skill in choice of materials and work as would be commensurate with the gravity of risk involved in protecting the structure against fault and hazard.

"5) In the absence of express warranties 'caveat emptor' controls the purchase and sale of a completed structure and the builder-vendor will not be strictly liable to a purchaser on an implied warranty that the structure is fit or suitable for the purpose ordinarily intended, even

---

properly made only in a jury trial. Civ. R. 50(A). In a bench trial, a party may move for entry of dismissal under Civ. R. 41(B)(2), at the close of the plaintiff's case, but not for a directed verdict. Since neither party objected to the procedure employed by the court, and since neither party has raised the point on appeal, we shall treat the motion as it was treated by the trial court; namely, as a motion for a directed verdict.

though the vendor was responsible for its construction.

"6) Purchaser (Plaintiff) has the burden of proving that vendor-builder failed to exercise ordinary care and skill and Plaintiff failed in such burden."

For their first assigned error,[3] the appellants contend that the findings of the trial court are not supported by the weight of the evidence. We are constrained to agree.

Findings of fact and conclusions of law are prepared for the sole purpose of "enabl[ing] a reviewing court to determine the existence of assigned error." *Orlow* v. *Vilas* (1971), 28 Ohio App. 2d 57, 59 [57 O.O.2d 106].

"The function of the separate finding [*sic*] of fact and law is to determine whether or not the court was correct in its application of the law to the facts; and further, whether or not the court's findings of fact were consistent with the evidence in the case." *Trimble* v. *Oakley Bank* (1930), 9 Ohio Law Abs. 145, 146.

The trial court has the duty of issuing findings regarding all of the ultimate facts which are determinative of the case. *Feller-Olmsted Co.* v. *J. Ritchie & Sons, Inc.* (1963), 119 Ohio App. 148, 150 [26 O.O.2d 339]. A mere recital of the evidence presented is not a finding of fact. *Albright* v. *Hawk* (1895), 52 Ohio St. 362; *Manchester* v. *Cleveland Trust Co.* (1953), 95 Ohio App. 201 [53 O.O. 152]; *McShane* v. *Keiser* (1958), 108 Ohio App. 514 [9 O.O.2d 495].

The trial court entered only one finding which qualified as a "finding of fact" which is pertinent to the resolution of this case. The court specifically found that the appellants did not notify the appellees of any defects in the house until August 28, 1978, the date that process was served upon the appellees. (Finding of Fact No. 6.) It was undisputed at trial that the appellants notified the appellees of numerous defects after they took possession of the residence in August 1977, and that numerous repairs were performed by the appellees. The appellees, moreover, concede in their brief on appeal that this finding of fact is unsupported by the evidence.

The other pertinent "findings" of the trial court are not findings of fact, but a summary of the evidence. The trial court found that no evidence was adduced which tended to prove that the house was constructed in an unworkmanlike manner, that cheaper or inferior materials were substituted for the materials set forth in the plans and specifications, or that the appellees acted maliciously or fraudulently toward the appellants.

Findings of fact should consist of a simple declaration of the ultimate facts in the case, not a description of the evidence. In the case at bar, the trial court found "no evidence" of poor workmanship, breach of contract, fraud, and malice. If there were in fact no evidence in the record to support the foregoing claims,

---

[3] The first assignment of error provides:

"The decision of the court below is against the manifest weight of the evidence.

"A. The court erred in finding that plaintiffs did not complain to defendants about any alleged defects until August 28, 1978.

"B. The court erred in finding that there was no evidence that the structure was built in an unworkmanlike manner; that there was no evidence that the structure was constructed other than in accordance with the plans and specifications; and that there was no evidence that there were defects in the structure.

"C. The court erred in holding that there was no evidence that the defendants acted with knowledge and/or malice to defraud, deceive, or conceal from plaintiffs material matters.

"D. The court misconstrued the allegations of the supplemental complaint regarding the building code of Rocky River, and erred in finding that there was no evidence in support of plaintiffs' contention regarding said building code."

we would find no error prejudicial to the appellants and we would be required to affirm the decision of the trial court. The appellants, however, adduced a prima facie case of poor workmanship and breach of contract against Westland Builders, Inc., and a prima facie case of fraud against appellees Westland and Barney Schwarzer.[4] This evidence is set forth below.

The appellants' expert witness, John Denega, testified that the construction company exhibited poor workmanship in several respects. He stated that there was excessive deflection in several parts of the house, in some cases caused by failure to adequately support the floors. Areas under the shower, the master bedroom, the fireplace hearth, and the kitchen floor were specified. Denega also stated that the storm window sashes did not fit properly, and ought to be replaced. He also described several minor defects in the house which he attributed to poor workmanship: a crack in the basement wall, a poor patching job in the basement floor, a heating duct that passes through a floor joist and a cold air return, the failure of the exterior metal doors to latch properly, and dining room doors that did not hit the door stop.

Denega and the appellant Timothy Freeman testified that the appellee Westland Builders, Inc., failed to employ the materials listed in the specifications, and that in some instances, the materials used were cheaper and of inferior quality. Although the contract called for the installation of nine windows in the basement, it was undisputed that only four were installed. It was also admitted that the appellee installed Masonite interior doors instead of wood doors, and Mansfield plumbing fixtures instead of American Standard. The appellant Freeman also testified that the appellee employed a three-inch column instead of a four-inch column in the basement, to support the floor above.

The appellant also adduced evidence tending to show that he was required to pay substantially more for the house than was called for in the original contract. The original purchase contract called for a purchase price of $92,500. Both Timothy Freeman and Barney Schwarzer, the parties who executed the contract, testified that this amount was inflated in order to enable Freeman to obtain a larger mortgage. It was understood that Freeman would perform some of the work on the house himself, and receive a "credit" of $10,500 for labor and materials expended on this work. Mr. Freeman testified that it was also understood that the purchase price included a reserve (referred to by the parties as a "spendable credit" or "expendable credit") of $2,600 to cover other materials and extra items such as carpeting that might be ordered by the appellants at their option. Appellant Freeman stated that he performed the work entitling him to the $10,500 work credit, with the exception of a single $300 item, and that while he and his wife did order some extras, they expected that the bill for the extras would be only five or six hundred dollars over the $2,600 amount of "spendable credit."

According to the escrow documents, the appellants had deposited over $12,400 in escrow and were to obtain a $74,000

---

[4] We agree with the finding of the trial court that the appellants adduced no evidence of actual malice on the part of any of the defendants-appellees. Actual malice is defined as follows:

"Actual or express malice has been defined as that state of mind under which a person's conduct is characterized by hatred or ill will, a spirit of revenge, retaliation, or a determination to vent his feelings upon other persons." *Pickle* v. *Swinehart* (1960), 170 Ohio St. 441, 443 [11 O.O.2d 199].

The trial court was therefore correct in dismissing the claims for punitive damages based on malice.

mortgage. If they had been granted a work credit of $10,500, the price to be paid out of escrow to Westland Builders, Inc., would have been $92,500 less $10,500, or $82,000. The construction company would have received the proceeds of the mortgage ($74,000) plus eight thousand dollars in cash from the escrow account, and $4,400 would have been refunded to the appellants.[5]

Instead of giving the appellants a credit of $10,500, however, Westland Builders, Inc., gave them a credit of $7,700. Mr. Freeman testified that on the day of closing, Barney Schwarzer unexpectedly presented them with a bill for $5,100 and told the appellants that they could either pay the bill and accept the house, or find another place to live, and be sued for this amount and more. Freeman said that since he, his wife and eight children had already sold and moved out of their old home, they had no choice but to accept Schwarzer's terms. Schwarzer tendered the check for $7,700, which he testified was a "settlement" of the work credit of $10,500 provided for in the purchase agreement. Freeman endorsed the $7,700 check back to Westland Builders, Inc. The remaining funds payable to Westland Builders, Inc., were taken from escrow: $74,000 in proceeds from the mortgage and $10,800 in cash deposited by the appellants. After deduction of the escrow fee, the appellants received only $1,100 from the escrow account instead of the $3,900 that they had expected.

The net effect of the foregoing transaction was that the appellants paid $2,800 more for the house than they were required to under the terms of the contract, because they received only $7,700 as work credit instead of $10,500.[6]

The appellees adduced evidence rebutting the allegations of the appellants. The expert witness who appeared on behalf of the appellees noted that Mr. Freeman had removed a load-bearing wall in the master bedroom, which would permit the entire structure to shift slightly, causing deflection. He further stated that the fireplace rests on the exterior wall, and that deflection of floor joists could not cause the hearth to crack. Appellees' expert stated that the Mansfield toilets and Masonite interior doors were of equal quality to the materials specified in the contract. Appellee Barney Schwarzer testified that Mr. Freeman agreed to all the substitutions and deviations from the original contract. Mr. Schwarzer testified that he gave the appellants $7,700 in work credit instead of $10,500 in work credit because Mr. Freeman failed to perform the work he was supposed to and because he charged some materials to Westland Builders' account, instead of paying for the materials himself, as required by contract.[7]

From the foregoing recital of the evidence it is apparent that the decision of the trial court should have turned upon the evaluation by the court of the credibility of the parties and the reliability of their respective experts. Instead, the court erroneously found that no evidence existed to support the appellants' claims of breach of contract, poor workmanship, and fraud. The findings of fact are "insufficient to support the judicial act of the

---

[5] Since escrow fees payable by appellants equalled $500, only $3,900 would have been refunded to the appellants.

[6] Since Mr. Freeman admitted that he and his wife ordered $500 to $600 in extras over and above the $2,600 "spendable credit," and since he admitted that he did not perform one item listed on the work credit as $300, the amount of the overcharge must be reduced by $800 to $900, to a total of $1,900 to $2,000.

[7] Materials which should have been paid for by Mr. Freeman under the contract comprised approximately $800 out of the total bill of $5,100.

court in entering judgment." *McShane* v. *Keiser, supra,* at 519. The appellants' first assigned error is well taken in part. Therefore, the decision of the trial court finding no evidence of malice is affirmed; the decision finding no evidence of breach of contract, poor workmanship, and fraud is reversed and remanded to the trial court for further consideration.

The appellants contend in their second assigned error[8] that the court erred in directing a verdict for the appellee Barney Schwarzer at the close of the appellants' evidence. The appellants had alleged that Mr. Schwarzer fraudulently substituted materials and overcharged them for their home.

As noted in *Tibbs* v. *National Homes Constr. Corp.* (1977), 52 Ohio App. 2d 281 [6 O.O.3d 300], fraud may not be predicated upon promises or representations relating to *future* conduct unless it is proven that, at the time of the promise, the person making the promise had no intention of carrying it out. We find no proof in the record that, at the time he signed the contract of purchase on behalf of Westland Builders, Inc., Mr. Schwarzer intended to substitute other materials for the materials specified in the contract. The claim of fraud may not, therefore, be predicated upon the substitutions such as Mansfield plumbing fixtures for American Standard and Masonite doors for wood doors.

The plaintiffs did adduce evidence, however, that Mr. Schwarzer acted fraudulently in charging the appellants for items added to the house at the request of the city of Rocky River. Mr. Freeman testified that he and his wife contracted for the purchase of a five-bedroom home on January 24, 1977, for the price specified in the contract. Mr.

Schwarzer testified that the Freemans contracted for the construction of a four-bedroom home, and later asked for a five-bedroom home. He said that the appellants asked how much more the five-bedroom home would cost, and that he refused to give them a price. As noted above, on the day of closing, Mr. Schwarzer presented the appellants with a bill for over $5,100, of which approximately $1,700 was attributable to changes required by the city of Rocky River on account of the fact that a five-bedroom home was constructed instead of a four-bedroom home.[9]

The elements of an action for fraud are:

"* * * (1) an actual or implied false representation of, or concealment of, a material fact, (2) with knowledge of the falsity, or such utter disregard for the truth or recklessness that knowledge may be inferred, and (3) the intention to induce the plaintiff to rely upon the misrepresentation." *Logsdon* v. *Graham Ford Co.* (1978), 54 Ohio St. 2d 336, 340, at fn. 2 [8 O.O.3d 249].

Mr. Schwarzer stated that he knew that a five-bedroom home would have to have extra windows and an extra closet; it was his testimony, however, that he informed the Freemans of these requirements and advised them that there would be an extra charge. Mr. Freeman denied that he was informed that there would be an extra charge for these changes.

A trier of fact could reasonably have concluded that Mr. Schwarzer knowingly or recklessly concealed the fact that the original specifications would have to be modified to comply with the building code of the city of Rocky River, and that he did

---

[8] The second assignment of error provides:
"The court erred in granting the motion of defendant B. Schwarzer for a directed verdict after plaintiffs rested their case in chief."

[9] These changes included the construction of extra windows and closets, and the use of larger floor joists.

218

this in order to induce the appellants to sign the purchase agreement. The trial court erred in directing a verdict for appellee Barney Schwarzer. The second assignment of error is well taken.

Accordingly, the decision of the trial court entering judgment for Westland Builders, Inc. and Barney Schwarzer is affirmed in part and reversed in part, and this case is remanded for further proceedings consistent with this opinion.

*Judgment affirmed in part and reversed in part and case remanded.*

DAY, J., concurs.

PATTON, J., concurs in part and dissents in part.

PATTON, J., concurring in part and dissenting in part. The issue before this court was whether the verdict was contrary to the weight of the evidence. I fully agree with the majority that a reversal is in order regarding this issue because the trial court's findings of fact stated that no evidence was presented regarding appellants' claims when, in fact, the record clearly reveals that evidence was presented to support their claims. Accordingly, I fully concur with the holding as stated in paragraph three of the syllabus of the majority's opinion.

I dissent with the majority's position as stated in paragraph two of the syllabus. I question the majority's finding that there was only a "mere" recital of the evidence presented. However, I do not think that this issue regarding what constitutes proper findings of fact is before the court in this case. It was not raised as an assignment of error, and its resolution is not necessary for the disposition of this appeal.