**PHOENIX TECHNOLOGIES, INC., Plaintiff,**

v.

**TRW, INC., Defendant.**

**No. 92–CV–5863.**

United States District Court, E.D. Pennsylvania.

Jan. 5, 1994.

A. Charles Peruto, Sr., Philadelphia, PA, for plaintiff.

Michael F.R. Harris, Jeffrey G. Weil, Thomas Dolgenos, Dechert, Price & Rhoads, Philadelphia, PA, Jennifer E. Millson, Deborah P. Warner, TRW Inc., Cleveland, OH, for defendant.

Frederic J. Baker, pro se.

### MEMORANDUM AND ORDER

Joyner, District Judge.

At issue before the Court is defendant TRW, Inc.'s motion for summary judgment and the response of plaintiff, Phoenix Technologies, Inc. On October 9, 1992, plaintiff filed a six count complaint against defendant, stating claims for breach of contract, breach of an implied covenant of good faith and fair dealing, bad faith tort, fraud and misrepre-

1. The CSD was engaged primarily in computer maintenance and servicing.

2. Section 6.7 of the Agreement provides "if Phoenix should fail to consummate the Closing on the Closing Date for any reason other than those stated in Section 6.6, then TRW will not, and will

sentation, negligent misrepresentation and promissory estoppel/detrimental reliance. Plaintiff's claims all stem from the circumstances surrounding an Agreement of Purchase and Sale ("Agreement") between the parties, which was terminated by defendant pursuant to section 2.1 of the fourth amendment to the Agreement. Defendant has also filed a counterclaim against plaintiff sounding in fraud. Defendant now seeks summary judgment on the ground that there is no genuine issue of material fact with respect to any of plaintiff's claims against defendant.

In its motion for summary judgment, defendant makes the following arguments: first, summary judgment on the breach of contract claim is warranted because there is no evidence that defendant breached the contract, and even if there was, plaintiff was not damaged by the breach. Second, there are no causes of action in Ohio for breach of an implied covenant of good faith and fair dealing and for the tort of bad faith in cases involving commercial contracts. Third, plaintiff has no evidence to support its claims for fraud and negligent misrepresentation. Finally, plaintiff has not introduced sufficient evidence to state a claim for promissory estoppel. For the reasons set forth more fully below, we will grant defendant's motion as to all counts of the complaint.

#### Facts

This case arises pursuant to the Agreement entered on October 26, 1990 between the parties. Under the Agreement, plaintiff was to buy and defendant was to sell a portion of defendant's business called the Customer Service Division ("CSD")[1] for forty million dollars. Under the Agreement, closing was supposed to occur on November 30, 1990. If closing did not occur by that date, the Agreement provided that defendant would be entitled to retain a one million dollar prepayment made by plaintiff that went towards the purchase price.[2]

have no obligation to, refund the Prepayment to Phoenix."

Section 6.6 states:
If the Closing does not occur solely because of either (1) TRW's inability to deliver to Phoenix at the Closing a certificate in the form described in

Closing did not occur by that date, and subsequently the parties entered into four amendments to the Agreement, each extending the date for closing and also requiring option payments by plaintiff that went towards the purchase price. These option payments were also subject to a similar condition of retention by defendant that, as with the original prepayment, defendant could retain the option payments if closing did not occur by the dates specified in the amendments. The total amount of option payments and the prepayment paid by plaintiff was 3.5 million dollars.

The final amendment included a provision which stated:

> Unless otherwise extended by the parties in writing, this Agreement shall terminate on the date which is not less than ten (10) days after delivery of written notice by one party to the other given at any time after June 3, 1991, if the Closing has not occurred on or before the date specified in the notice.

Section 2.1 of the Fourth Amendment.

The date for closing specified in the fourth amendment was May 3, 1991. Closing did not occur by that date; thus, on June 4, 1991, defendant sent plaintiff a 10–day notice letter stating that the Agreement would be terminated unless closing occurred by June 14, 1993. The parties failed to close by June 14.

### Standard

In considering a motion for summary judgment, the court must consider whether the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact, and whether the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The court is required to determine whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202

(1986). In making this determination, all reasonable inferences must be drawn in favor of the nonmoving party. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2512. While the movant bears the initial burden of demonstrating an absence of genuine issues of material fact, the nonmovant must then establish the existence of each element of its case. *J.F. Feeser, Inc., v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1531 (3rd Cir.1990), *cert. denied*, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

### Discussion

*I. Choice of law*

 Jurisdiction in this case is based on diversity of jurisdiction. Thus, before we can address the issues raised in defendant's motion, we must first decide what state law to apply in this case. Plaintiff argues that it is possible to apply either Pennsylvania, New Jersey or Ohio law to this case, and suggests that we use Ohio conflict of law rules in order to make our determination. However, it is well settled that federal courts apply the conflict of law rules of the state in which they sit when confronted with this issue. *American Air Filter Co., Inc. v. McNichol*, 527 F.2d 1297, 1299 n. 4 (3rd Cir.1975); *McCoy v. Marriott Corp.*, 91 F.R.D. 610, 612 n. 2 (E.D.Pa.1981) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Thus, we must apply Pennsylvania conflict of law rules in order to determine which state's substantive laws govern this case.

Plaintiff correctly states that the laws of Pennsylvania, New Jersey and Ohio all appear to be applicable in this case. Plaintiff resides in Pennsylvania, numerous correspondence was initiated in Pennsylvania, plaintiff executed the amendments in Pennsylvania and it is also the state where plaintiff intended to headquarter the CSD. Defendant is headquartered in Ohio, and it is

---

Item 4 of Appendix G; (2) the parties' failure, for reasons beyond Phoenix's control, to obtain all requisite governmental approvals and authorizations necessary for consummation of the transactions contemplated hereby; or (3) TRW's nonper-

formance of any covenant of TRW contained herein or any obligation imposed hereunder on TRW; then TRW will immediately refund the Prepayment to Phoenix.

also the state where defendant's representatives executed the amendments to the Agreement. The Agreement itself appears to have been executed by the parties at their respective headquarters. In addition, the CSD was headquartered in New Jersey, and many of the negotiations prior to the Agreement occurred in New Jersey.

However, the parties included a forum selection clause in the Agreement designating Ohio law as the law governing this case. The clause states: "This Agreement will be governed by and construed in accordance with the internal substantive laws of the State of Ohio, except where the substantive laws of another jurisdiction mandatorily apply." § 11.11 of the Agreement. Generally, a federal court sitting in diversity in Pennsylvania will honor the parties' forum selection clause. *American Air Filter*, 527 F.2d at 1299, n. 4 (citing *Boase v. Lee Rubber & Tire Corp.*, 437 F.2d 527 (3rd Cir.1970)); *Composiflex, Inc. v. Advanced Cardiovascular Sys., Inc.*, 795 F.Supp. 151, 155 (W.D.Pa.1992) (citations omitted). It is only where plaintiff's ability to pursue its cause of action would be impaired or because of some other compelling reason that the clause would not be honored. *Instrumentation Assoc. v. Madsen Elec.*, 859 F.2d 4, 7–8 (3rd Cir.1988) (citing *Central Contracting Co. v. C.E. Youngdahl & Co.*, 418 Pa. 122, 133, 209 A.2d 810, 816 (1965)); *LCI Communications, Inc. v. Wilson*, 700 F.Supp. 1390, 1396 (W.D.Pa.1988).

We can find no reason why Ohio law should not be applied in this case. It does not impair plaintiff's ability to pursue its cause of action by applying Ohio law here; indeed, plaintiff admits that no matter which laws of the three states are applied, the result would be the same. Nor does plaintiff identify any reason why Ohio law should not be applied. Finally, we note that the decision to apply Ohio law is also appropriate under the laws of both Ohio and New Jersey because both states recognize the validity of forum selection clauses. *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 130 N.J. 324, 341, 614 A.2d 124, 133 (1992) (courts will uphold contractual choice provisions unless it violates New Jersey's public policy); *Jarvis v. Ashland Oil, Inc.*, 17 Ohio St.3d 189, 192,

478 N.E.2d 786, 789 (1985) (law chosen will not be applied if it is repugnant to and in violation of public policy of laws of Ohio, and if Ohio has materially greater interest than the state chosen). As such, Ohio law will be applied in this case.

## II. Breach of contract

### A. Recovery of compensatory damages

 In its complaint, plaintiff alleges that defendant breached the contract for the following reasons:

(a) defendant TRW accelerated the CSD billing cycle in May which was inconsistent with the ordinary course of business and had the effect of providing cash to TRW at the expense of future working capital; (b) defendant TRW accelerated its accounts receivable collection efforts which was inconsistent with the ordinary course of business and had the effect of providing cash to TRW at the expense of plaintiff's future working capital; (c) defendant TRW implemented a restructuring out of the ordinary course of business; (d) the represented CSD receivables included one million dollars ($1,000,000.00) to two million dollars ($2,000,000.00) of accounts relating to customers with expired contracts and who do not continue to use the services of CSD; (e) defendant TRW failed to obtain and deliver environmental clearances; (f) defendant TRW failed to obtain and deliver consents to the assignment of contracts; and (g) requiring that plaintiff obtain a bank guarantee of the ten million dollars that ($10,000,000.00) that Phoenix was to finance; (h) breached its obligations under paragraph 4.4 of the Agreement including but not limited to "... negotiate in good faith such other and further agreements as they may deem appropriate for the orderly transfer of the business from TRW to Phoenix...."; and (i) failing to comply with the terms of the Agreement as amended and perform as required thereunder.

Complaint, para. 32. As a result of defendant's alleged breaches, plaintiff seeks recovery of the three million five hundred thousand dollars made to defendant in the form of prepayment and option payments, as well

as compensatory damages in excess of $50,-000. Plaintiff's claim for damages is based on the alleged fact that plaintiff lost over seventy million dollars because the deal did not close, and because the CSD was worth over one hundred fifteen million dollars. Complaint, paras. 33, 34, and prayer for relief.

In its motion, defendant states that it is entitled to summary judgment on the breach of contract claim because plaintiff did not close under the Agreement due to an inability to obtain the appropriate financing for the deal. Defendant submits evidence which shows that plaintiff would have closed if it had obtained the appropriate financing. As such, defendant argues that plaintiff's damages were caused by plaintiff's own inability to obtain financing, and therefore were not caused by any alleged breaches of the contract by defendant.

On the other hand, plaintiff argues that it was because of defendant's breaches that it was unable to obtain financing and therefore could not close. Plaintiff first argues that defendant's failure to conduct the CSD in the ordinary course of business, which included defendant's acceleration of billing cycles as well as acceleration of collection efforts, which in turn caused the accounts receivable to be reduced, and the implementation of a restructuring plan out of the ordinary course of business, all materially adversely affected plaintiff's ability to obtain financing. Plaintiff also argues that the alleged breach by defendant of the implied covenant of good faith and fair dealing must also be considered in determining whether it has established a claim for breach of contract. Under this argument, plaintiff basically states that by the time the fourth amendment was entered into, defendant had orally agreed to provide financing to plaintiff. As a result, plaintiff ceased its efforts to obtain financing elsewhere. When defendant sent the unilateral termination notice, defendant was still in the process of conducting its due diligence in order to ascertain whether or not it could finance the debt. As such, plaintiff argues that defendant breached the implied covenant of good faith and fair dealing because defendant's conduct constituted an interference with plaintiff's ability to obtain financing

and because there was no contractual requirement imposed on defendant requiring it to unilaterally terminate the agreement when it did. Plaintiff further argues that defendant's acts of materially misrepresenting the validity of the accounts receivable and by failing to operate the CSD in the ordinary course of business and consistent with past practices also constituted breaches of the implied covenant of good faith and fair dealing and therefore constituted a breach of the contract.

■ Under Ohio law, before a party can recover damages on a breach of contract action, there must first be a showing that the party has been damaged by the breach of contract. *Logsdon v. Ohio Northern University*, 68 Ohio App.3d 190, 195, 587 N.E.2d 942, 945 (1990); *Munoz v. Flower Hosp.*, 30 Ohio App.3d 162, 168, 507 N.E.2d 360, 366 (1985). Thus, in *Munoz*, appellant sued the hospital for breach of contract when it refused to reappoint him to its staff. Appellant argued that the credentials committee of the hospital had breached the staff bylaws by failing to fully process his application for reappointment within three months from the date he submitted it. However, the court, in affirming the trial court's decision below, held that before appellant could recover damages, he would have to show that the credentials committee would have recommended him for reappointment within the three month period. Given that there was no evidence of this, but rather, the evidence showed that the committee would have denied his application if forced to make the decision within three months, appellant had no basis for a breach of contract action. On the other hand, if a party to a contract interferes or prevents the completion of the contract, it has breached the contract, and cannot repudiate it on the ground that the other party did not perform as required by the contract. *Rockwell Int'l Corp. v. Regional Emergency Medical Serv. of Northwest Ohio, Inc.*, 688 F.2d 29, 31 (6th Cir.1981).

Defendant has attached numerous deposition transcripts, affidavits and letters in support of its motion for summary judgment. The evidence shows that the reason the par-

ties entered into each amendment to the Agreement was because plaintiff did not have the financing available to close the deal. Deposition of Mary Bright, pp. 16, 31–34, deposition of Herbert Balzuweit, p. 67. Further, the evidence shows that plaintiff concedes defendant was entitled to retain the prepayment because the closing failed to occur on the original November 30 closing date. Deposition of Herbert Balzuweit, pp. 66–67. The evidence also shows that in spite of plaintiff's knowledge of the alleged breaches by defendant, it continued to negotiate and enter into amendments to the Agreement. *Id.* at p. 155. Further, plaintiff would have closed the deal on June 14th, 1993, if defendant would have financed the transaction. *Id.* at pp. 108–09, deposition of Vincent Tirendi, p. 124. Finally, defendant presents evidence that all of the banks or financing sources which plaintiff sought financing from refused to finance for reasons other than the alleged breaches by defendant. *See* depositions of Joseph A. Augustini, pp. 15–18; deposition of Mark S. Farrelly, pp. 25–26; plaintiff's answers to defendant's interrogatories, pp. 5–9; deposition of Robert C. Schmidt, pp. 15–17, 59–62. For instance, many of the potential lenders simply were not interested in providing money, or felt that the computer industry was an area beyond their expertise. Thus, defendant's evidence shows that plaintiff failed to close because it did not have the necessary financing, and this had nothing to do with the alleged breaches by defendant.

Plaintiff's evidence is insufficient to overcome defendant's evidence in order to show that a genuine issue of material fact exists.

Plaintiff first submits an affidavit of Herbert Balzuweit, who is the Executive Vice President and Chief Financial Officer of plaintiff. In this affidavit, Mr. Balzuweit alleges that plaintiff was harmed because all of defendant's alleged breaches adversely affected plaintiff's ability to obtain financing. For example, the existence of "evergreen billings"[3] was misrepresented by defendant, and this affected plaintiff's ability to obtain financing because the available collateral was reduced. Affidavit of Herbert Balzuweit, para. 60. It is also alleged that defendant accelerated collection of the accounts receivable out of the ordinary course of business, which also materially affected plaintiff's ability to obtain financing because it reduced the accounts receivable. *Id.* at paras. 61–63. Mr. Balzuweit also states that defendant's acts of billing customers in advance out of the ordinary course of business, restructuring of the CSD, as well as not providing financing after indicating it would do so, further affected plaintiff's ability to obtain financing. *Id.* at paras. 86, 88, 90–101.

Despite Mr. Balzuweit's affidavit, none of the other evidence presented by plaintiff coincides with Mr. Balzuweit's allegations. Plaintiff has presented no other evidence to show that any of the alleged breaches affected its ability to obtain financing, nor any evidence suggesting that the potential lenders declined to lend because of any of defendant's actions.[4] Absent any further proof regarding plaintiff's damages, the affidavit alone will not create a genuine issue of material fact in light of defendant's overwhelming evidence to the contrary. *See United States v. Premises Known As 717 So. Woodward*

---

3. Evergreen billings are billings which appear to be valid account receivables but in reality are billings relating to service contracts which had been cancelled by the customer. In this case, they were included by defendant as accounts receivable because under its system, customers were automatically billed for renewable contracts. It was not until a customer actually notified the district office that she was terminating the contract that the changes to the system were processed and the billing system would then properly reflect the terminated account.

4. Although plaintiff contends that the report of its expert witness, Mr. David Howard Glusman, an accountant, also provides evidence that defendant's acts adversely affected plaintiff's ability to

obtain financing, it still does not create a genuine issue of material fact. Mr. Glusman concluded after review of the documents and reports submitted by plaintiff that defendant's acts would have a detrimental effect on plaintiff's borrowing capacity. However, this is merely a conclusion, and does not provide evidence that defendant's acts did have a detrimental effect on plaintiff's borrowing capacity. *See Town Sound & Custom Tops v. Chrysler Motor Corp.*, 743 F.Supp. 353, 364 (E.D.Pa.1990), *aff'd*, 959 F.2d 468 (1992) (citing various cases for the proposition that expert opinion which does not establish an issue of fact cannot defeat a motion for summary judgment).

*St.*, 2 F.3d 529, 533 (3rd Cir.1993); Fed. R.Civ.P. 56(e) (adverse party's affidavit must set forth specific facts showing a genuine issue exists for trial). While plaintiff makes various attempts to create genuine questions of fact regarding the alleged breaches, plaintiff's efforts fail because without any proof of damage by the alleged breaches, the breaches themselves are not material. *See Munoz*, 30 Ohio App.3d 162, 507 N.E.2d 360 (1985) (regardless of alleged breach, there is no recovery on a breach of contract claim absent proof of damage by the breach). Regarding the evidence in the light most favorable to the plaintiff, even assuming the alleged breaches occurred, there is no evidence to suggest that they were the reason why plaintiff could not obtain financing. As such, plaintiff fails to sustain its burden.

Plaintiff also strives to create an issue of material fact with regard to defendant's alleged oral agreement to provide financing. Plaintiff concedes it is not defendant's refusal to ultimately provide financing that constituted a breach, rather, it is a breach of the covenant of good faith and fair dealing which in turn constitutes a breach of the contract because plaintiff relied on defendant's alleged oral promise to provide financing of the senior debt, and as a result of that reliance it ceased its efforts to obtain financing of the senior debt elsewhere. Plaintiff also contends that this materially affected its ability to close because it was unable to obtain financing from other sources in the ten days provided in the termination letter. It submits that good faith and fair dealing required defendant to give plaintiff a reasonable amount of time in which to obtain financing elsewhere, instead of simply unilaterally terminating the Agreement with only ten days notice. Plaintiff also argues that not only is this a breach of the contract through the implied covenant of good faith and fair dealing, but that this also breaches paragraph 4.4 of the Agreement which states "the parties will negotiate in good faith such other and further agreements as they may deem appropriate for the orderly transfer of the Business from TRW to Phoenix."

Plaintiff's arguments fail for several reasons. First, none of these acts by defendant can constitute a breach of contract in light of the clear language of the contract. Even if defendant orally promised to provide financing, which is a disputed point by the parties, the language of the fourth amendment specifically provides "Under no circumstances will TRW be deemed to have violated any covenant in or obligation imposed by the Agreement solely because of TRW's refusal to extend financing to Phoenix." Fourth amendment, para. 2.4. It also provides that the fourth amendment consists of the entire understanding between the parties and supersedes all other agreements, covenants, arrangements, warranties, etc., between the parties, whether written or oral. Fourth amendment, para. 2.5. Further, the fourth amendment also provides:

> Unless otherwise extended by the parties in writing, this Agreement shall terminate on the date which is not less than ten (10) days after delivery of written notice by one party to the other given at any time after June 3, 1991, if the Closing has not occurred on or before the date specified in the notice.

Fourth amendment, para. 2.1. The fourth amendment is dated on May 3, 1991.

"Under Ohio law the construction to be given a written contract is a matter of law to be determined by the court." *Rockwell*, 688 F.2d at 31 (1982) (citing *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978)). "When the terms in a contract are unambiguous, courts will not . . . create a new contract by finding an intent not expressed in the clear language employed by the parties." *Shifrin v. Forest City Enterprises*, 64 Ohio St.3d 635, 638, 597 N.E.2d 499, 501 (1992). Given the clear language of these provisions, defendant had every right not to provide financing, as well as every right to terminate the contract after giving ten days written notice. As such, there cannot be a breach of contract by defendant's acts.

Second, there is no evidence to suggest that defendant's acts constituted a breach of the express covenant to negotiate in good faith. To the contrary, defendant accommodated plaintiff by agreeing to extend the closing date four times, and even considered

financing the deal when it appeared that plaintiff still could not obtain financing. There is no evidence to show that defendant did not act in good faith, or that defendant in any way interfered with plaintiff's ability to obtain financing. However, as further support for its argument, plaintiff submits the deposition of Mr. Cocca, indicating he would have lent plaintiff ten million dollars if defendant had provided the financing for the senior debt.[5] Even assuming the evidence to be true, there still is a lack of evidence showing that defendant prevented plaintiff from obtaining the financing elsewhere. In fact, this evidence tends to contradict plaintiff's argument that the alleged breaches prevented plaintiff from obtaining financing. Moreover, in light of the clear language of the contract, there is no reason why plaintiff should have relied on defendant to provide the financing. As such, defendant's motion for summary judgment on the breach of contract claim will be granted.

### B. Recovery of prepayment and option payments

■ Plaintiff also contends that it is entitled to the prepayment and option payments made to defendant. Again, the clear language of the contract controls this issue. As previously stated, the one million dollar prepayment was subject to a condition of the contract which specified defendant could retain the prepayment if closing failed to occur for any reason other than the conditions set out in paragraph 6.6 of the Agreement. *See infra* n. 2. Further, each amendment contained a provision which stated that each option payment was in consideration of defendant extending the closing date and was a prepayment of the purchase price. These option payments were also subject to the same condition of retention as was the prepayment. First amendment, para. 3.8. Finally, the fourth amendment contains a provision stating "if Phoenix should fail to consummate the Closing on the Closing Date for any other reason than those stated in section 6.6, then TRW will not, and will have no obligation to, refund the Option Payments." Fourth amendment, para. 2.4.

Plaintiff has produced no evidence to refute defendant's evidence that closing did not occur solely because plaintiff could not obtain financing. Further, plaintiff presents no evidence showing that closing failed to occur solely because of defendant's inability to deliver to plaintiff at the closing a certificate of good standing, to obtain all requisite governmental approvals, or because of the nonperformance of any covenant by defendant (the conditions set out in paragraph 6.6 of the Agreement). Thus, under the clear language of the Agreement, defendant is entitled to retain the 3.5 million dollars paid by plaintiff in the form of the prepayment and option payments.

### III. Breach of Implied Covenant of Good Faith and Fair Dealing

■ Plaintiff repeats the arguments made with regard to its breach of contract claim to show that defendant's acts also constitute a breach of the implied covenant of good faith and fair dealing. In Ohio, however, implied covenants of good faith and fair dealing are only recognized in limited situations. While the Ohio courts recognize such covenants in insurance contracts, *see Carrols Corp. v. Canton Joint Venture*, No. 88–2115–1, 1990 WL 99047, at 7 (Ohio Com.Pl. June 27, 1990) (citing *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 275, 452 N.E.2d 1315 (1983)), in all other contracts, the duty of good faith and fair dealing must arise from the language of the contract. *Fodor v. First Nat'l Supermarkets, Inc.*, 1990 WL 93210, No. 58587, 1990 Ohio App. LEXIS 2779, at 5–6 (Ohio App. July 5, 1990), *aff'd*, 63 Ohio St.3d 489, 589 N.E.2d 17 (1992) (citations omitted); *Carrols*, 1990 WL 99047, at 7. Further, "[t]here can be no implied covenant where subject [sic] is completely covered by the contract." *Fodor*, 1990 WL 93210, 1990 Ohio App. LEXIS 2779, at 5–6 (citations omitted).

In *Carrols*, the plaintiff alleged defendant violated the implied covenant of good faith

---

5. Interestingly, while plaintiff uses this evidence to show it could have obtained financing if not for the acts of defendant, plaintiff did not notify defendant that it had a means to finance a portion of the deal in an attempt to further negotiate the deal once it received the ten day notice letter.

and fair dealing which arose from a lease agreement between the parties. Plaintiff argued that the construction of a food court in the mall where plaintiff was a tenant violated the obligation of good faith and fair dealing implied in the lease. The court examined the language of the lease which stated that defendant had the discretion to change the location of other tenants and to change the nature of any occupancy of any store unit in the mall at any time. Based on the express language of the contract, the court found that no obligation of good faith and fair dealing arose from the contract because the language specifically manifested an intention by the parties that defendant would have complete discretion over future tenants in the mall. *See also Fodor*, 1990 WL 93210, 1990 Ohio App. LEXIS 2779, at 7–8 (trial court erred in finding a breach of obligation of good faith and fair dealing where express language of contract did not prevent defendant from relocating its operations, and therefore, no such obligation could be implied from the contract).

Based on the above rules, we also find there can be no obligation of good faith and fair dealing construed from the language of the Agreement. As stated previously, the express language of the contract provides that defendant did not have an obligation to provide financing. The contract also provides that defendant could terminate the contract upon ten days notice anytime after June 3, 1991. Contrary to what plaintiff asserts, there can be no obligation of defendant implied from the Agreement to provide plaintiff with more than ten days notice upon its decision to terminate the contract. Plaintiff had negotiated these terms with defendant, and was fully aware of these terms. If plaintiff intended for defendant to provide it with more time to arrange for financing prior to termination, it should have included such language in the contract. Thus, as in *Carrols* and *Fodor*, no implied covenant of good faith and fair dealing arises from the language of the contract, and defendant's motion for summary judgment on Count II of the complaint is granted.

## IV. Bad faith tort

Defendant next asserts that there is no cause of action in Ohio for the tort of bad faith, and even if there was, summary judgment is warranted because plaintiff cannot prove causation in this case. While plaintiff does not specifically address defendant's argument, it appears that plaintiff's argument regarding the breach of the implied covenant of good faith and fair dealing also applies to its claim for the tort of bad faith.

■ After careful review of Ohio law, it does not appear that there is a specific cause of action for bad faith tort, other than against insurance companies for a "breach of a duty established by a particular contractual relationship." *Zoppo v. Homestead Ins. Co.*, No. 62926, 1993 WL 262641, at 2 (Ohio App. July 8, 1993) (citing *Motorists Mutual Ins. Co. v. Said*, 63 Ohio St.3d 690, 590 N.E.2d 1228 (1992)). Regarding insurance companies, this tort arises by virtue of the duty of good faith imposed on them in the handling and payment of the claims of the insured. *Zoppo*, 1993 WL 262641, at 2. "Showing a breach of the covenants of good faith and fair dealing is equivalent to showing bad faith." *Phillips v. State Farm Fire & Casualty Co.*, No. CA92–11–215, 1993 WL 386291, at 3 (Ohio App. Sept. 27, 1993) (citing *Slater v. Motorist Mutual Ins. Co.*, 174 Ohio St. 148, 21 O.O.2d 420, 187 N.E.2d 45 (1962)). No Ohio cases were found dealing with this tort other than cases dealing with insurance contracts.

■ As previously explained, plaintiff has failed to establish a cause of action for breach of the implied covenant of good faith and fair dealing. Likewise, it follows that plaintiff's claim for bad faith tort must also fail. Even if Ohio courts recognized a cause of action for bad faith arising from contracts other than insurance contracts, plaintiff fails to establish any duty owed by defendant that was breached which would trigger this cause of action. As such, defendant's motion for summary judgment is granted with respect to Count III of the complaint.

## V. *Fraud*

 Defendant next argues that it is entitled to summary judgment with respect to plaintiff's claim for fraud because plaintiff has failed to establish any evidence showing that the elements of fraud have been satisfied. In its response, without specifically stating how each element has been satisfied, plaintiff states that the "totality of the circumstances" shows that plaintiff has established a jury question as to its fraud claim.

To state a cause of action for fraud in Ohio, a party must show:

a) a representation or, where there is a duty to disclose, concealment of a fact, b) which is material to the transaction at hand, c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, d) with the intent of misleading another into relying upon it, e) justifiable reliance upon the representation or concealment, and f) a resulting injury proximately caused by the reliance.

*Gaines v. Preterm–Cleveland, Inc.*, 33 Ohio St.3d 54, 55, 514 N.E.2d 709, 712 (1987). Further, a promise to perform in the future cannot constitute a representation that is the basis for fraud unless it can be shown that at the time the promise was made, the promisor intended not to perform the promise. *Link v. Leadworks Corp.*, 79 Ohio App.3d 735, 742–43, 607 N.E.2d 1140, 1145 (1992); *Freeman v. Westland Builders, Inc.*, 2 Ohio App.3d 212, 217, 441 N.E.2d 283, 289 (1981).

Plaintiff alleges the following false representations by defendant in its complaint: 1) misrepresenting it would operate the CSD only in the usual course of business and consistent with its past practices; 2) misrepresenting the true amount of CSD accounts receivable in the Agreement which stated it contained "some" evergreen billings when in reality there was about one to two million dollars worth of evergreen billings; 3) misrepresenting it would obtain environmental clearances; 4) misrepresenting it would obtain consents to the assignment of contracts; 5) misrepresenting it would negotiate in good faith up until closing; and 6) misrepresenting it would comply with the Agreement as amended and perform in accordance thereto. Complaint, para. 54.

We find that plaintiff has not presented any evidence to show that a genuine issue of material fact exists with regard to its fraud claim because plaintiff cannot show that defendant made false representations of any sort. Regarding defendant's future promises to obtain environmental clearances and consents to the assignment of contracts, defendant presents evidence that plaintiff admitted it had no evidence to support its claim that defendant was lying when it made these promises. *See* deposition of Herbert Balzuweit, pp. 313–14. Defendant also presents evidence that plaintiff's attorneys admitted in their depositions that they had no knowledge that defendant did not comply with those representations. *See* depositions of Lori Smith, pp. 31–32, Harry Tillis, pp. 91–92. Plaintiff presents no evidence to the contrary, therefore, there is nothing to show that these representations were false.

Regarding defendant's promises to negotiate in good faith and comply with the Agreement as amended, defendant has also presented evidence that plaintiff stated it has no evidence showing that defendant did not intend to comply with these representations when it made them. Deposition of Herbert Balzuweit, pp. 314–16. Further, although plaintiff claims that these misrepresentations are evidenced by the fact that defendant did not provide financing, plaintiff further admits that it does not think Mr. Van Skilling was lying when he allegedly stated on May 1, 1991 that defendant would provide financing. *Id.* at 338–41. Moreover, given that the clear language of the contract indicates defendant had no obligation to provide financing, the fact that defendant did not provide financing cannot constitute any sort of misrepresentation that is inconsistent with its promises to comply with the Agreement and to negotiate in good faith.

Regarding defendant's promise to operate the CSD in the ordinary course of business, defendant demonstrates that plaintiff has no evidence to support this claim. In response to a deposition question of whether that promise "was false when made or that TRW

turned out to have breached that promise," plaintiff states defendant turned out to have breached that promise. *Id.* at 345. However, the affidavit by Mr. Balzuweit and the report of plaintiff's expert both state that the acceleration of the accounts receivable by defendant constituted a misrepresentation of that promise. Even accepting plaintiff's evidence as true, and assuming defendant did accelerate the accounts receivable, plaintiff still has not shown how this constitutes a misrepresentation. There is nothing in the Agreement stating that defendant could not collect its accounts receivable, nor is there anything in the Agreement stating at what rate they could be collected. Plaintiff argues that there is evidence of fraud because under the Agreement, defendant was entitled to all of the cash and plaintiff was entitled to all accounts receivable. However, simply because defendant accelerated the collection of accounts receivable does not mean it did not operate the CSD in the ordinary course of business. While plaintiff may have thought there would be a specific amount of accounts receivable available when the business was transferred, there is no evidence that defendant made any promises to that effect. Plaintiff's thoughts about these matters are not evidence upon which to deny a motion for summary judgment. As such, there is no specific misrepresentation by defendant regarding the promise to operate the CSD in the ordinary course of business.[6]

Finally, plaintiff argues there was a misrepresentation by defendant regarding the evergreen billings. Again, there is no misrepresentation here because defendant disclosed the existence of the evergreen billings in the Agreement. The Agreement states: "In accordance with the Supplemental Accounting Principles, some receivables are invoiced in advance of the rendering of service. Under some service contracts, the customer may be subsequently entitled to a credit for such matters as changes in the equipment schedule for such customer, or nonrenewal,

cancellation or early termination of a contract." Agreement, part C, para. 3(b). While plaintiff states that the word "some" is misleading because it turned out to be one to two million dollars worth of evergreen billings out of a total of seventeen million dollars worth of accounts receivable, this does not constitute a misrepresentation but rather, a misunderstanding about the Agreement in plaintiff's mind. It is true that *some* of the accounts receivable consisted of evergreen billings. Defendant presents evidence that it did not know what amount of accounts receivable consisted of evergreen billings, and plaintiff presents no evidence to the contrary. Moreover, defendant did not represent that *none* of the accounts receivable consisted of evergreen billings, rather, it stated there were some, and some turned out to be less than ten percent of the entire accounts receivable. Thus, there is no misrepresentation by defendant regarding the evergreen billings.

Given that plaintiff has failed to provide any evidence showing defendant made any false representations of any sort, plaintiff fails to rebut defendant's evidence regarding the claim for fraud. As such, summary judgment is granted in favor of defendant with respect to Count IV of the complaint.

## VI. Negligent misrepresentation

Defendant next argues that plaintiff has not provided adequate evidence to sustain its claim for negligent misrepresentation. While the complaint alleges that "defendant negligently supplied false information to plaintiff," plaintiff does not expand on this in its response to the motion for summary judgment and instead merely points to the affidavit of Mr. Balzuweit as evidence of its claim. Plaintiff's lack of clarity notwithstanding, it still fails to produce any evidence to support its claim for negligent misrepresentation.

Ohio has adopted the definition of the Restatement of Torts regarding negligent mis-

---

6. Further, the fact that defendant began cost-cutting measures and that it enacted certain layoffs is also not a misrepresentation of this promise. First, there is no evidence to indicate these actions were outside the ordinary course of business. Second, assuming plaintiff learned in late

May, 1991 that this restructuring was to begin, as plaintiff alleges, there still is no resulting injury to plaintiff as a result of any reliance on this alleged misrepresentation because by that time, plaintiff had ceased its efforts in obtaining financing.

representation. "One who … supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Brown v. Woodmen Accident and Life Co.*, 84 Ohio App.3d 52, 55, 616 N.E.2d 278, 279–80 (1992) (quoting Restatement (Second) of Torts, § 552(1) (1965) as cited in *Delman v. Cleveland Heights*, 41 Ohio St.3d 1, 4, 534 N.E.2d 835, 838 (1989)); *Doe v. Blue Cross/Blue Shield of Ohio*, 79 Ohio App.3d 369, 383, 607 N.E.2d 492, 501 (1992).

As stated above, there is no evidence that defendant has misrepresented any facts to plaintiff, and as such, plaintiff cannot then prove that defendant provided "false information" in order to satisfy its claim for negligent misrepresentation. Moreover, even if there is a question of fact as to whether defendant agreed to provide financing, plaintiff's reliance on that statement was not reasonable, thus, there can be no justifiable reliance. Given that the language of the fourth amendment stated that defendant had no obligation to provide financing, plaintiff acted at its own peril if it ceased looking for other financing in reliance on defendant's alleged promise. *See Brown*, 84 Ohio App.3d at 56, 616 N.E.2d at 280 (appellant's reliance on insurance agent's misrepresentation as to amount of insurance coverage was not justified when the amount of coverage was stated in clear and unambiguous terms in the insurance policy, to which appellant had access). Therefore, we will grant summary judgment for defendant with regard to Count V of the complaint.

## VII. Promissory estoppel

Finally, we address defendant's argument that plaintiff has not provided sufficient evidence to satisfy its claim of promissory estoppel. The doctrine of promissory estoppel provides that "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 104, 483 N.E.2d 150, 154 (1985) (citations omitted). Thus, to establish a cause of action, it must be proven that there was a clear and unambiguous promise, upon which plaintiff relied, that the reliance was reasonable and foreseeable, and that plaintiff was injured by said reliance. *Healey v. Republic Powdered Metals, Inc.*, 85 Ohio App.3d 281, 284, 619 N.E.2d 1035, 1037 (Ohio App.1992) (citations omitted).

Plaintiff argues that the conduct of defendant in promising to finance and then conducting due diligence with respect to the promise, caused plaintiff to rely to its detriment that defendant would provide financing. Plaintiff asserts that it was injured when defendant terminated the Agreement while it was still conducting due diligence because plaintiff could not obtain financing within the ten day notice period. Even assuming that plaintiff's evidence about the alleged promise to provide financing is true, however, plaintiff's claim still fails because its reliance was unreasonable in light of the clear language of the contract which stated that defendant was not obligated to provide financing. Thus, we will grant defendant's motion with respect to Count VI of the complaint.

## VIII. Conclusion

In sum, plaintiff fails to produce any evidence to defeat defendant's motion for summary judgment. Plaintiff has not proven that it was damaged by any alleged breaches of the Agreement and therefore its breach of contract claim fails. Ohio law does not provide a cause of action for breach of an implied covenant of good faith and fair dealing or a claim for bad faith tort under these circumstances, nor do the circumstances justify imposing an obligation of good faith and fair dealing upon defendant. Plaintiff has also failed to present evidence establishing any sort of misrepresentations by defendant with respect to its fraud claim. The lack of misrepresentations and justifiable reliance both defeat plaintiff's claim for negligent misrepresentation. Finally, plaintiff's claim of promissory estoppel also fails because any

reliance on defendant's alleged promise was unreasonable. An appropriate order follows.

### ORDER

AND NOW, this 5th day of January, 1994, upon consideration of the motion of defendant, TRW, Inc., for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and all responses thereto, it is hereby ORDERED that defendant's motion is GRANTED, and summary judgment is entered on all counts of the complaint in favor of defendant and against plaintiff.