**MEYERS et, Plaintiffs-Appellants, v. HOOPS, Defendant-Appellee.**

Ohio Appeals, Second District, Montgomery County.

No. 2311. Decided December 14, 1955.

Murray & Murray, Heber S. Leonard, Dayton, for plaintiffs-appellants.

Connelly, Cumming & Kessler, Dayton, by Joseph F. Connelly, of Counsel, for defendant-appellee.

(COLLIER, J, of the Fourth District, sitting by designation in the Second District.)

## OPINION

By COLLIER, J.

This is an appeal on questions of law and fact from a judgment of the Common Pleas Court of Montgomery County, Ohio, in an action instituted by the plaintiffs-appellants, as a partnership, seeking to recover damages from the defendant-appellee in the amount of $9,241.54, the alleged balance due on the purchase price on a contract of sale of the business owned and operated by the plaintiffs in Dayton, Ohio, and known as the Dayton Heating Supply Company.

Plaintiffs in their petition claim that on August 13, 1951, the parties entered into a written contract for the sale of said business: that the defendant paid the sum of $10,500 to the plaintiffs on the purchase price, and agreed to execute and deliver to the plaintiffs a note in said sum of $9,241.54 as final payment; that plaintiffs had performed all acts required of them to be performed in said contract, and that the

defendant has failed and refused to execute and deliver a note as final payment in accordance with the terms of the contract.

The defendant in his answer admits that on August 13, 1951, the plaintiffs and defendant entered into an agreement in writing for the sale of said business and that on August 15, 1951, plaintiffs delivered to the defendant the equipment, tools and machinery, located on the premises occupied by the Dayton Heating Supply Company. Defendant denies that he paid the plaintiffs the sum of $10,500.00 on the purchase price of said business, but claimed that said sum, pursuant to the contract, was to be held in escrow and to be delivered to the plaintiffs, if and when the conditions of the contract had been fully complied with.

Defendant denies all other allegations in plaintiffs' petition, and further avers that he was induced to enter into said contract by false representations made by the plaintiff, Meyers, acting for the plaintiffs, in the following particulars:

1. That there was in existence a certain franchise between plaintiffs and the Bard Manufacturing Company.

2. The same false representations as to the Condensation Engineering Company of Chicago, Illinois.

3. That under each of the franchises the plaintiffs represented to the defendant that they were the exclusive distributors of the products of said corporations in the Dayton area, and received said products on consignment.

4. That under said franchises plaintiffs received from said corporations commissions on all products of said corporations sold in the Dayton area, whether sold by plaintiffs or not.

5. That there was in existence a lease between plaintiffs and the Durrell Paint and Varnish Company, the owners of the building, a portion of which was occupied by the Dayton Heating Supply Company.

6. That the value of the goods, wares, stock and equipment contained on the premises occupied by the Dayton Heating Supply Company was of an approximate value of $9,200.00.

Defendant claims all these false representations were made by plaintiffs with knowledge of their falsity and were intended to mislead defendant; that defendant had a right to rely upon said representations, and did rely thereon in entering into the agreement, and because of said false representations and plaintiffs' failure to comply with other terms of the agreement the contract is invalid.

Defendant, by way of cross-petition, in which he avers the same facts as to false representations alleged in his answer, prays for a rescission of the contract and judgment against the plaintiffs in the sum of $10,500, the amount defendant claims was placed in escrow to be applied on the purchase price when plaintiffs had fully complied with all the terms of the contract. Plaintiffs, in their reply to defendant's answer and their answer to defendant's cross-petition, deny all affirmative allegations therein contained.

After a lengthy hearing, the lower court found against the plaintiffs on their petition and against the defendant on his cross-petition. While the case was pending in the lower court a receiver was appointed and

sold the business and has in his possession the sum of $5,145.97. The lower court ordered the receiver to pay this sum to the defendant, after payment of the costs of the receivership.

Both parties filed notice of appeal from the final judgment rendered in the Common Pleas Court, and have perfected their appeal on law and fact to this Court. The case has been submitted to this Court on a transcript of the evidence, the docket and journal entries of the lower court, and oral arguments and briefs. The evidence is very much in conflict. The plaintiffs had operated this business as a partnership for several years and on July 8, 1951 advertised the business for sale in a Dayton newspaper. Soon thereafter the defendant contacted Mr. Meyers by phone, and from that date until August 13, 1951, when the contract was entered into, there were numerous conversations between the parties in regard to questions now in dispute.

As we view the record, defendant's principal contentions are, first, that Mr. Meyers represented to the defendant that the plaintiffs had a franchise with the Bard Manufacturing Company, a manufacturer of furnaces, and the Condensation Engineering Company of Chicago, Illinois, giving plaintiffs the exclusive right to handle the products of these corporations in the Dayton area, and that the products of these corporations were received by the plaintiffs on consignment. Secondly, that the value of the goods, wares, stocks and equipment on the premises was of the approximate value of $9,200.00 and that when the inventory was completed the value was shown to be $13,741.54, a substantial variance of $4,541.54. The testimony showing what was said and done by the parties in the negotiations which took place between the parties prior to and at the time of entering into the contract is contradictory. In a situation such as this, where there is a conflict in the testimony as to conversations, any conclusion as to where the truth lies must be based largely upon the credibility of the witnesses. Since the witnesses did not appear in person in this Court, and we have only the transcript of the evidence, we must give credence to the conclusion of the lower court in its determination of the credibility of a witness. In the case of Johnson v. Tilden, 23 C C (NS) 161, quoting the second syllabus:

"In an action in equity for the rescission of a contract, heard upon a trascript of the evidence in the court below where there is some uncertainty as to the weight of the evidence, an appellate court will accept the conclusions of the trial court which saw the witnesses face to face, and had better opportunity to judge of their credibility."

See also 3 O. Jur. 2nd, 665, Section 713.

After reading the transcript of evidence and considering all the facts and circumstances of this transaction, we find that the defendant was induced to enter into this contract by false representations knowingly made by the plaintiffs to the defendant; that the defendant had a right to and did rely upon said representations. We have arrived at the same conclusion as the lower court on these two principal points of dispute. In regard to the alleged acts of fraud concerning the lease we find the same to be immaterial. The difference between a lease and a contract to lease is of little legal significance. 24 O. Jur. 754.

The next question to be considered is whether the defendant is entitled to a rescission of the contract and the return of the money advanced by defendant to the plaintiffs, to be applied to the purchase price. The contract was entered into August 13, 1951, and defendant took possession of the premises on August 16, 1951. On August 26, defendant learned in a conversation with Mr. Smith, an officer of the Bard Manufacturing Company, that there was no franchise in existence between the Dayton Heating Supply Company and the Bard Manufacturing Company, and that the plaintiffs had not received furnaces from this corporation on consignment; that the defendant would have to establish his own credit with this company before any merchandise would be shipped to him. With this knowledge the defendant continued to operate this business, employing eight or ten men, meeting the payroll, purchasing furnace equipment, sold some of the stock, paid the rent on the premises for the month of September, and advertised the business for sale in a Dayton newspaper. The defendant did not disaffirm the contract until September 27, 1951, when the plaintiffs requested him to sign a note for the balance of the purchase price. It was then, when the parties met with their attorneys in the office of Mr. Leonard, attorney for the plaintiffs, that the defendant informed plaintiffs he was rescinding the contract because of said false representations and returning the business to the plaintiffs. Is this delay and conduct of the defendant sufficient to establish a waiver by implication of the defendant's right to rescind the contract? Stated differently, should the defendant be permitted to experiment with the business more than a month after discovering the fraud, and still be entitled to rescission of the contract? **19 O. Jur.,** at **page 458,** reads:

"By the better reason, if not by the weight of authority, the performance of an executory contract after knowledge of facts making it voidable on the ground of fraud in its procurement is a waiver of any right of action for damages for the fraud."

See also **11 O. Jur., 2nd, page 546,** where it reads:

"Ordinarily, the right to rescind a contract must be exercised with great promptness. The right to rescind cannot be held suspended while the holder of the right experiments with other remedies or uses it as a weapon to induce better terms in the existing contract as an alternative to rescission. Accordingly, unreasonable delay in manifesting an election to rescind a contract may constitute a waiver of the right to rescind."

A waiver is generally defined as an intentional relinquishment of a known right, or such conduct as warrants an inference of relinquishment of such right.

In our opinion, considering all the facts and circumstances above set forth, the defendant has waived his right to rescind the contract by his unreasonable delay in electing his remedy to rescind. A duty rested upon the defendant to act promptly upon discovery of the fraud. He cannot remain silent, continue to experiment with the business, and a month later assert his right to declare the contract void.

Since neither the plaintiffs nor defendant are entitled to the relief prayed for in the petition or cross-petition, the parties must be left

in the same position as when this action was instituted. The sum of $5,145.97 in possession of the receiver, representing the proceeds of the sale of the business, rightly and equitably belongs to the defendant.

An entry may be submitted dismissing both the petition and the cross-petition, each to pay the costs incurred by him, and ordering the receiver to pay to defendant the money in his possession after paying the costs of receivership.

Judgment accordingly.

MILLER, PJ, HORNBECK, J, concur.