**PHOENIX TECHNOLOGIES, INC., Plaintiff,**

v.

**TRW, INC., Defendant.**

**No. 92–CV–5863.**

United States District Court, E.D. Pennsylvania.

March 9, 1994.

A. Charles Peruto, Sr., Philadelphia, PA, for plaintiff.

Michael F.R. Harris, Jeffrey G. Weil, Thomas Dolgenos, Dechert, Price & Rhoads, Philadelphia, PA, Jennifer E. Millson, Deborah P. Warner, TRW, Inc., Cleveland, OH, for defendant.

## MEMORANDUM & ORDER

JOYNER, District Judge.

The matter before the Court is the motion of plaintiff, Phoenix Technologies, Inc., for summary judgment on defendant TRW's amended counterclaim pursuant to Rule 56 of the Federal Rules of Civil Procedure. We recently granted summary judgment in favor of defendant on all counts of plaintiff's complaint. *See Phoenix Technologies, Inc. v. TRW, Inc.,* 840 F.Supp. 1055 (E.D.Pa.1994).

Briefly stated, this matter arose when the parties entered into an Agreement of Purchase and Sale ("Agreement") whereby defendant was to sell and plaintiff was to buy one of defendant's divisions, the Customer Service Division ("CSD") for forty million dollars. Although the original closing date was set for November 30, 1990, the closing date was extended four times in order for plaintiff to obtain financing for the deal. Ul-

timately, plaintiff was unable to obtain financing, and on June 14, 1991, defendant terminated the Agreement pursuant to a termination clause contained in the Fourth Amendment to the Agreement.

Defendant's amended counterclaim states claims for both fraud and breach of contract, and seeks compensatory damages in the amount of $38.8 million dollars, punitive damages, as well as costs, prejudgment interest, and attorneys' fees. Plaintiff now seeks summary judgment based on the following arguments: 1) that defendant has failed to establish a cause of action for fraud, 2) that defendant has waived its claim for fraud, 3) that defendant's claim of fraud is barred by the provisions of the Agreement as amended, 4) that defendant had failed to establish a cause of action for breach of contract, and 5) that defendant is not entitled to recover punitive damages in this action.

### Standard

█ In considering a motion for summary judgment, the court must consider whether the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact, and whether the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The court is required to determine whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In making this determination, all reasonable inferences must be drawn in favor of the nonmoving party. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2512. While the movant bears the initial burden of demonstrating an absence of genuine issues of material fact, the nonmovant must then establish the existence of each element of its case. *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.,* 909 F.2d 1524, 1531 (3rd Cir.1990), *cert. denied,* 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991) (citing *Celotex Corp. v. Catrett,* 477

U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

### Discussion

#### A. Fraud

Plaintiff makes several arguments to support its claim that summary judgment on defendant's counterclaim for fraud is warranted. First, plaintiff argues that there can be no cause of action for fraud in this case because defendant bases its allegations of fraud on promises by plaintiff of future performance, and not on representations of past or existing facts. Second, plaintiff states that defendant cannot show that any of plaintiff's representations are false. Third, plaintiff states that there is no evidence of justifiable reliance by defendant on plaintiff's representations. Fourth, plaintiff argues that the conduct of defendant in executing the Agreement and the amendments constitutes a waiver of any alleged fraud by plaintiff. Finally, plaintiff argues that the provisions of the Agreement as amended bar any claim by defendant for fraud. For the reasons set forth more fully below, we find that there is no genuine issue of material fact with respect to the claim for fraud, and therefore, plaintiff is entitled to summary judgment.

█ In order to state a claim for fraud in Ohio[1], a party must show:

> a) a representation or, where there is a duty to disclose, concealment of a fact, b) which is material to the transaction at hand, c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, d) with the intent of misleading another into relying upon it, e) justifiable reliance upon the representation or concealment, and f) a resulting injury proximately caused by the reliance.

*Gaines v. Preterm–Cleveland, Inc.,* 33 Ohio St.3d 54, 55, 514 N.E.2d 709, 712 (1987). Further, a promise to perform in the future cannot constitute a representation that is the basis for fraud unless it can be shown that at

---

1. We previously held that this case is governed by Ohio law. *See Phoenix,* 840 F.Supp. at 1058–59.

the time the promise was made, the promisor intended not to perform the promise. *Link v. Leadworks Corp.*, 79 Ohio App.3d 735, 742–43, 607 N.E.2d 1140, 1145 (1992); *Freeman v. Westland Builders, Inc.*, 2 Ohio App.3d 212, 217, 441 N.E.2d 283, 289 (1981).

The basis of defendant's fraud claim is that plaintiff fraudulently induced defendant to enter into the Agreement and amendments to the Agreement based on oral and written representations about financing which plaintiff knew were untrue, or which plaintiff made in reckless disregard of the truth. Central to defendant's claim are two specific representations made by plaintiff. The first is contained in a letter sent by plaintiff to defendant dated September 21, 1990, where plaintiff proposed to buy the CSD for forty million dollars subject to a number of conditions. The relevant portion of the letter for defendant's fraud claim states: "Our financing of this proposed acquisition is currently being finalized, and we expect to have written confirmation within two to three days." The letter further indicates that financing is to be acquired from Metropolitan Life Insurance Co., Meridian Bank and Creditanstalt, along with the sums expected from each lender. Finally, the letter states "[a]s we receive written confirmation from our lenders and investors during the next few days, we will fax copies to you." The second representation is contained in a letter sent by plaintiff to defendant dated November 2, 1990. This letter includes plaintiff's "Expected Financing Plan" and in it, plaintiff represents that it will obtain 25 million dollars from "Metropolitan Life Insurance Co. or Heller Financial (or other lenders)." [2]

Defendant then presents evidence to show that plaintiff's representations were false. For instance, defendant presents evidence showing that at the time plaintiff sent the proposal letter, plaintiff had not even met with representatives of Metropolitan Life, nor was Metropolitan Life expected to confirm financing within two to three days. Furthermore, the evidence suggests that

Metropolitan Life never agreed to lend money to plaintiff.

█ We need not reach the issue of whether plaintiff's representations constitute fraud, however, because we find that defendant has waived its right to bring a claim for fraud. " '[T]he performance of an executory contract after knowledge of facts making it voidable on the ground of fraud in its procurement is a waiver of any right of action for damages for the fraud.' " *Eve v. Rutledge*, 73 Ohio App.3d 366, 369, 597 N.E.2d 194, 196 (1991) (quoting *Keller v. Citizens Discount Corp.*, 104 Ohio App. 206, 208, 144 N.E.2d 886, 887 (1957)). In this case, although plaintiff's proposal letter was sent on September 21, 1990, the parties did not enter into the Agreement until October 26, 1990. It is undisputed that defendant did not receive any letters confirming financing from plaintiff subsequent to plaintiff's proposal letter but prior to entering into the Agreement. Even after entering into the Agreement, defendant sent a letter to plaintiff requesting written confirmation of financing, apparently because defendant was unsure plaintiff would be able to close by the November 30 closing date. In response, plaintiff sent defendant a preliminary timetable indicating that Meridian Merchant Bank had been retained as a financial advisor, and outlining the steps Meridian was to take in obtaining financing on behalf of plaintiff. The timetable also indicated that it was "only a preliminary timetable and in no way should be construed as a commitment or assurance on behalf of [Meridian] or [plaintiff] that the acquisition financing can be arranged in accordance herewith." Although defendant alleges that plaintiff also assured it orally that financing would be forthcoming, it is undisputed that the parties failed to close by the November 30 closing date because of a lack of financing by plaintiff.

Additionally, defendant extended the closing date four times because plaintiff was unable to obtain financing by each closing date. Each time the parties amended the Agreement, plaintiff paid an option payment

---

**2.** This letter was apparently sent after the parties entered into the Agreement on October 26, 1990, however, section 3.3(g) of the Agreement states that the financing plan was delivered simultaneously with the execution of the Agreement.

which, under the terms of the Agreement, was non-refundable if plaintiff failed to close by the new closing date (a similar paragraph regarding the one million dollar prepayment paid by plaintiff when the parties originally contracted was also contained in the Agreement). In total, plaintiff paid defendant 3.5 million dollars in prepayments and option payments which defendant was entitled to retain when plaintiff failed to close by the final closing date.

Under the circumstances, it is clear that there is no genuine issue of material fact. Even viewing the evidence in the light most favorable to defendant, and assuming that plaintiff did orally represent it could obtain financing each time the parties entered into an amendment to the Agreement, there still is no evidence from which a reasonable jury could conclude that defendant did not know shortly after entering into the Agreement that plaintiff could not obtain financing. From the evidence, defendant should have known prior to entering into the Agreement that plaintiff did not have the requisite financing because in one month's time, plaintiff never forwarded any confirmation letters to defendant. Even if defendant did not know prior to entering into the Agreement, the circumstances show that it certainly knew that plaintiff had no commitments of financing when plaintiff failed to obtain financing by the first closing date. Not only was there a lack of written confirmation of any financing, but the express terms of the Agreement allowing defendant to retain the prepayment and option payments evidence that defendant knew plaintiff had no commitments of financing. Plaintiff's own preliminary timetable indicates there was no commitment of financing by the first closing date. Nor could the "expected financing plan" evidence any commitment because that only listed potential financing sources. Despite all these facts, defendant agreed to extend the Agreement not once, but four additional times. The evidence clearly shows that defendant knew early on that plaintiff did not have the financing, and despite this fact, it continued to enter into amendments to the Agreement, thereby waiving its claim for fraud.

Case law in Ohio clearly demonstrates that defendant waived its claim for fraud. For instance, in *Eve*, the evidence showed that the buyer of a bartending school knew three weeks after the transaction was complete that the seller had defrauded him during the negotiations by providing false, misleading and inaccurate information. Despite this fact, he continued making payments on the promissory note for three more years. As such, the court affirmed the trial court's decision to grant summary judgment because appellant had waived his claim for fraud.

In *Baltimore & O.R. Co. v. Jolly Bros. & Co.*, 71 Ohio St. 92, 72 N.E. 888 (1904), the court held that plaintiffs also waived their claim for fraud where they learned after entering into a contract to excavate and then construct a new roadbed that defendant had misrepresented the nature of the kind and character of the material to be removed from the earth. Plaintiffs had entered into the contract under the impression that the earth to be removed was mainly dry bank gravel. Three days after entering into the agreement, when plaintiffs began performing, they learned that the earth consisted of mainly mud, quicksand and wet excavation. Plaintiffs confronted defendant's agent, and he orally represented that defendant would pay extra for the additional work needed. Despite his assurances, each month when plaintiffs were paid, they never received any additional compensation. Plaintiffs continued to work on the project for six months despite the lack of any such payments and their knowledge that they had originally been defrauded. As such, the court held that plaintiffs had waived their claim for fraud because of their actions.

In *Keller v. Citizens Discount Corp.*, 104 Ohio App. 206, 144 N.E.2d 886 (1957), the court held that the trial court erred by not directing a verdict for defendant where the evidence showed that plaintiff's claim for fraud had been waived. In this case, the parties had contracted to exchange certain real estate. The parties negotiated through a mutual agent, who allegedly represented to plaintiff that the second floor of defendant's property was rented out. However, before closing the transaction, plaintiff learned from

defendant that he had thrown the tenants out. As such, the court held plaintiff could not bring a claim for fraud by claiming he relied on the alleged misrepresentations of the agent where plaintiff entered into the agreement even after learning of the fraud.

· On a related note, the court in *Meyers v. Hoops*, 12 O.O.2d 481, 140 N.E.2d 65 (Ohio App.1955), recognized the waiver principle when it held that defendant waived its right to rescind ˙a contract where he learned of plaintiff's fraud but continued to act under the agreement. In *Meyers*, defendant purchased a heating supply business from plaintiff and learned three days after entering into the agreement that during negotiations, plaintiff had misrepresented the fact that the business had a franchise with another company giving it the exclusive right to handle certain products. However, despite learning this fact when defendant contacted the company in question, defendant continued to operate the business for a month by hiring employees, meeting the payroll and paying the rent. The court held that defendant's delay in seeking to rescind the agreement once he learned of the fraud operated to waive his right to rescission.

Finally, federal courts also recognize the principle of waiver. For instance, in *Wasserman v. Trans World Airlines, Inc.*, 632 F.2d 69 (8th Cir.1980), the court affirmed the district court's dismissal of plaintiff's claim for fraudulent misrepresentation. Plaintiff, who had been "bumped" from the flight on defendant's airline when he had a confirmed reservation, had alleged that defendant had failed to disclose its overbooking practice. However, because plaintiff accepted alternative transportation, the court held that plaintiff's claim of fraud was waived.

Like the above cases, summary judgment is warranted because no reasonable jury could conclude that defendant did not know shortly after entering into the Agreement, if not before, that plaintiff could not obtain financing. Even though defendant may argue that this case is different from the others because it did not know it had been defrauded, any reasonable business person would have known within a short amount of time

that plaintiff did not have financing despite its representations. As such, defendant waived its claim for fraud by entering into the amendments to the Agreement, and summary judgment is appropriate because no reasonable jury could conclude otherwise.

### B. ·Breach of contract

Plaintiff argues that defendant has failed to state a cause of action for breach of contract because defendant is precluded from bringing such an action by virtue of section 6.7 of the Agreement. Section 6.7 states:

˛Retention of Prepayment. The parties agree that it is difficult and impracticable to determine the exact amount of damage TRW will suffer as a result of Phoenix's failure to consummate the Closing for reasons other than those set forth in section 6.6. Therefore, if Phoenix should fail to consummate the Closing on the Closing Date for any reason other than those stated in Section 6.6, then TRW will not, and will have no obligation to, refund the Prepayment to Phoenix. In such event, the parties agree and stipulate that TRW shall retain the Prepayment as liquidated damages (and not as a penalty), and that the Prepayment is a reasonable estimate of TRW's damages. TRW shall have no other claim against Phoenix hereunder except such claim as may arise under Section 11.2.[3]

Section 6.7 of the Agreement.

This section was incorporated into each of the amendments to the Agreement.

Defendant argues that section 6.7 only precludes it from bringing any actions against plaintiff for its failure to close, but that its breach of contract claim is predicated on certain representations and warranties made by plaintiff and which are contained in the Agreement. Specifically, defendant argues that plaintiff breached the following: 1) section 3.3(g) of the Agreement whereby plaintiff represents it has no reason to believe its Financing Plan cannot or will not be implemented; 2) section 3.3(i) of the Agreement whereby plaintiff represents that all of its warranties and representations are true and

---

**3.** Sections 6.6 and 11.2 are not relevant for purposes of this issue.

accurate; and 3) its representation in the First Amendment that it has no reason to believe that the Revised Financing Plan cannot or will not be implemented. Defendant argues that the injuries sustained from these breaches, like the injuries sustained from its fraud claim, are independent of the injuries sustained from plaintiff's failure to close, in part because defendant was induced into entering into the Agreement and the amendments based on these representations, and that it lost tens of millions of dollars based on its continued ownership of the CSD.

■■■ We find defendant's arguments to be without merit. "Under Ohio law the construction to be given a written contract is a matter of law to be determined by the court." *Rockwell Internat'l Corp. v. Regional Emergency Medical Serv.*, 688 F.2d 29, 31 (6th Cir.1982) (citing *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978)). "When the terms in a contract are unambiguous, courts will not ... create a new contract by finding an intent not expressed in the clear language employed by the parties." *Shifrin v. Forest City Enterprises*, 64 Ohio St.3d 635, 638, 597 N.E.2d 499, 501 (1992). Section 6.7 clearly states that defendant shall have no other claim against plaintiff if plaintiff fails to close, and that defendant is entitled to retain the prepayment and option payments. Clearly, defendant cannot now bring a breach of contract claim in light of section 6.7 because the parties contemplated that the 3.5 million dollars retained by defendant would suffice as liquidated damages.

Defendant is attempting to create a claim for breach of contract by using its claim for fraud. While defendant states that the damages suffered from plaintiff's breaches of its representations are different from the damages suffered when plaintiff failed to close, in reality the damages stemming from both breaches are the same: continued ownership and operation of the CSD and the resulting loss of money. In a sense, defendant is attempting to skirt the language of section 6.7 by pointing to other promises and warranties that plaintiff breached when it failed to close. But the fact remains that these promises were breached because plaintiff failed to close. In other words, the breaches are one in the same because once plaintiff failed to close, its representations and warranties were also breached. Thus, defendant is specifically precluded from bringing a claim for breach of contract because it contracted not to bring a claim against plaintiff for its failure to close, and implicitly, all the consequences resulting from plaintiff's failure to close. Further, defendant cannot now attempt to recover for the alleged breaches in a breach of contract action under the guise of recovering damages sustained from plaintiff's alleged misrepresentations because that is the purpose of defendant's fraud claim. As such, summary judgment is granted in favor of plaintiff on defendant's breach of contract claim.

### C. Punitive damages

Finally, plaintiff argues that there can be no recovery by defendant for punitive damages, even if fraud is proven, because there is no evidence of malice or ill will by plaintiff. Defendant takes the opposite position, and states that plaintiff's conduct is especially egregious here because plaintiff knew defendant was losing millions of dollars for the previous five years, and yet it continued to represent that financing would be obtained.

■■■ In order to receive punitive damages in a fraud case, a party must show that the fraud was aggravated by the existence of ill will or malice, or that the wrongdoing is particularly egregious or gross. *Atram v. Star Tool & Die Corp.*, 64 Ohio App.3d 388, 391, 581 N.E.2d 1110, 1112 (1989). Punitive damages are designed to punish the wrongdoer's conduct and to deter future conduct "resulting from a mental state so callous in its disregard for the rights and safety of others that society deems it intolerable." *Calmes v. Goodyear Tire & Rubber Co.*, 61 Ohio St.3d 470, 473, 575 N.E.2d 416, 419 (1991). For purposes of punitive damages, actual malice is defined as "1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or 2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial

harm." *Id.; Atram,* 64 Ohio App.3d at 392, 581 N.E.2d at 1112.

 Even if there was a genuine issue of material fact with respect to defendant's fraud claim, this is not a case entitling defendant to punitive damages. Plaintiff has provided evidence to demonstrate that it made efforts to obtain financing throughout the period that the parties were involved in attempting to close the deal. Defendant does not allege that plaintiff made no efforts to obtain financing. If that were the case, then punitive damages might be warranted. However, there is no evidence suggesting that plaintiff was motivated by any malice or ill will in this case.[4] As such, defendant would not be entitled to punitive damages even if it could prove fraud, and summary judgment in favor of plaintiff is granted on the claim for punitive damages.

### Conclusion

In sum, there is no genuine issue of material fact with respect to any of defendant's claims. First, defendant waived its claim to fraud by entering into the amendments to the Agreement after knowledge that plaintiff did not have financing. Second, defendant's claim for breach of contract is precluded by section 6.7 of the Agreement. Finally, even if fraud could be proven, this is not a situation that would entitle defendant to punitive damages. As such, summary judgment is also granted in favor of plaintiff on all of defendant's claims. An appropriate order follows.

### ORDER

AND NOW, this 9th day of March, 1994, upon consideration of plaintiff's motion for summary judgment on defendant's amended counterclaim pursuant to Rule 56 of the Federal Rules of Civil Procedure, and all responses thereto, it is hereby ORDERED that plaintiff's motion is GRANTED, and summary judgment is entered in favor of plaintiff and against defendant on all counts of defendant's amended counterclaim.

---

4. Indeed, as support for its fraud claim, defendant even argues that plaintiff was motivated to lie about its financing efforts because it truly desired to acquire the CSD. While we do not condone such conduct, this is hardly the type of conduct that warrants punitive damages.